Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

December 13, 2017

WILLIAM M. McCOOL, Clerk

By _Emily Nero_ Deputy

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MADHAVI VUPPALAPATI, SATISH KUMAR VUPPALAPATI, SRINIVAS SISTA, and GURU PRASAD RAO PANDYAR,

    Defendants.

CR17-317 RSL

**INDICTMENT**

The Grand Jury charges that:

## INTRODUCTION

At all material times:

1.     MADHAVI VUPPALAPATI and SATISH KUMAR VUPPALAPATI are a sister and brother team that owned, operated, and otherwise controlled a number of companies, many of which were affiliated with a publically traded company in India called Prithvi Information Solutions, Limited ("Prithvi"). Together with their co-conspirators, MADHAVI and SATISH VUPPALAPATI orchestrated a factoring fraud

Indictment - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

scheme that resulted in millions of dollars of loss to a company called Kyko Global, Inc. During the scheme, MADHAVI VUPPALAPATI's primary residence was in Bellevue, Washington. SATISH VUPPALAPATI resided in India but traveled to the United States to facilitate the scheme.

2. SRINIVAS SISTA was a full-time employee of various companies affiliated with Prithvi. During much of the fraud scheme, he worked in Bellevue, Washington.

3. GURU PRASAD RAO PANDYAR was another full-time employee of various companies affiliated with Prithvi. During much of the fraud scheme, GURU PANDYAR worked in Bellevue, Washington.

4. Prithvi Solutions, Inc. ("PSI") is a Delaware corporation registered to do business in Washington. MADHAVI VUPPALAPATI was the president of PSI.

5. Prithvi Information Solutions International, LLC ("PISI") is a Pennsylvania limited liability company registered to do business in Washington. PISI's sole member was MADHAVI VUPPALAPATI.

6. Prithvi Catalytic, Inc. ("Prithvi Catalytic") is a Delaware corporation registered to do business in Washington. Prithvi Catalytic's principal place of business was Bellevue, Washington. MADHAVI VUPPALAPATI was the owner of Prithvi Catalytic until 2014.

7. Inalytix, Inc. ("Inalytix") is a Nevada corporation and its principal place of business is located in Bellevue, Washington. Inalytix's president and director was MADHAVI VUPPALAPATI.

8. International Business Solutions, Inc. ("IBS") is a North Carolina corporation, under the control of MADHAVI and SATISH VUPPALAPATI.

9. Avani Investments, Inc. ("Avani") is a Delaware corporation created by GURU PANDYAR and his spouse.

Indictment - 2

10. Ananya Capital Inc. ("Ananya") is a Delaware corporation and registered to do business in Washington and with its principal place of business in Redmond, Washington. SRINIVAS SISTA was Ananya's agent, president and director.

11. Cemetrix, Inc., is a Washington company. MADHAVI VUPPALAPATI is the company's registered agent.

12. DCGS, Inc. ("DCGS") was created as a Pennsylvania corporation by MADHAVI VUPPALAPATI on or about June 1, 2012. The office address for DCGS, Inc. was a condominium in Pittsburgh owned by MADHAVI VUPPALAPATI.

13. EPP, Inc. ("EPP") was created as a Washington corporation by MADHAVI VUPPALAPATI on or about July 12, 2012. EPP's principal location was identified as a Bellevue address owned by a cousin of MADHAVI VUPPALAPATI, and its registered agent is MADHAVI VUPPALAPATI.

14. Financial Oxygen, Inc. ("Financial Oxygen") was created as a Washington corporation by SRINIVAS SISTA on or about May 1, 2012, and its principal place of business was SRINIVAS SISTA's home address in Redmond. SRINIVAS SISTA was Financial Oxygen's president and registered agent.

15. Huawei Latin American Solutions, Inc. ("Huawei") was created as a Florida corporation. On or about January 17, 2012, SRINIVAS SISTA registered Huawei to do business in Washington and indicated that the company's principal place of business was in Bellevue, Washington.

16. L3C, Inc. ("L3C") was created as a Washington corporation by GURU PANDYAR on July 13, 2012.

17. Kyko Global, Inc. ("Kyko") is a Canadian corporation with its principal place of business in Ontario, Canada. Kyko Global GmbH is a wholly-owned subsidiary of Kyko with its principal place of business in the Bahamas.

18. Among other financial services, Kyko provides accounts receivable factoring services. "Accounts receivable" is an accounting term signifying debts owed to

a company for services rendered. An "accounts receivable factoring agreement" is an agreement between the company to which the receivables are owed, the company with the obligation to pay, and a third-party company. The right to collect payment for the receivables is assigned to the third-party company, which in turn provides advance payment to the company to which the receivables were owed originally in return for a factoring fee.

## COUNTS 1-15

## (Wire Fraud)

**A.     The Scheme and Artifice to Defraud**

19.    The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 - 18 of this Indictment.

20.    Beginning on or around August 2011, and continuing until on or about July 2014, at Bellevue, within the Western District of Washington, and elsewhere, MADHAVI VUPPALAPATI, SATISH VUPPALAPATI, SRINIVAS SISTA, GURU PANDYAR, and others known and unknown to the grand jury, knowingly devised a scheme and artifice to defraud Kyko and to obtain money and property by means of materially-false and fraudulent pretenses, representations, and promises, and by means of the concealment of material facts.

21.    The essence of the scheme was for the defendants and their co-conspirators to fraudulently induce Kyko to enter factoring agreements under which the defendants would sell and assign nonexistent receivables to Kyko in return for payments under the factoring agreement.

**B.     The Manner and Means of the Scheme**

The manner and means used to accomplish the scheme to defraud included the following:

Indictment - 4

### 1. The Defendants Induce Kyko to Enter Into the Factoring Arrangement

22. In 2011, the defendants entered into negotiations with Kyko about the possibility of Kyko providing accounts receivable factoring services to Prithvi. During the negotiations, MADHAVI and SATISH VUPPALAPATI represented to Kyko that Prithvi was a successful and growing company that provided information technology services to a number of customers in the United States. MADHAVI and SATISH VUPPALAPATI claimed that Prithvi had valuable accounts receivable with a number of reputable clients.

23. MADHAVI and SATISH VUPPALAPATI offered to assign accounts receivable related to a number of well-known companies, including the following five companies: (1) Huawei, a global networking and telecommunications company; (2) Financial Oxygen, a large U.S. financial services company; (3) DICK's Sporting Goods, a national retailer with over 600 stores; (4) Enterprise Products Partners, a publicly listed U.S. energy asset company; and (5) L3 Communications, a U.S. publicly listed defense contractor.

24. In truth and fact, these five companies either were not customers of Prithvi or were not asked to approve the assignment of accounts receivable to Kyko. Nevertheless, the defendants and their co-conspirators went to great lengths to create the illusion that these companies had agreed to permit Prithvi to assign accounts receivable to Kyko. Among other things, the defendants created sham companies using abbreviated or slightly different names of the actual businesses, and opened bank accounts under the names of the sham companies. The actual and sham companies corresponded as follows:

| Actual Company | Sham Company |
| --- | --- |
| DICK'S Sporting Goods, Inc. | DCGS, Inc. |
| Enterprise Products Partners, L.P. | EPP, Inc. |

Indictment - 5

| Financial Oxygen, Inc. (based in California) | Financial Oxygen, Inc. (based in Washington) |
|---|---|
| Huawei Investment & Holding Co. Ltd. | Huawei Latin American Solutions, Inc. |
| L-3 Communications Holdings, Inc. | L3C, Inc. |

25. The defendants and their co-conspirators created fraudulent websites for the sham companies that duplicated information from the authentic company's website or redirected to the authentic company's website. Members of the conspiracy even posed as employees of the sham companies using false identities and email accounts that were cleverly designed to appear like accounts belonging to the authentic companies.

26. Deceived by this elaborate ruse, Kyko entered into three factoring agreements with Prithvi and its related entities (hereinafter, collectively, "the Prithvi companies"). SATISH VUPPALAPATI signed the first agreement in approximately September 2011 in his capacity as Managing Director of Prithvi. On approximately November 21, 2011, GURU PANDYAR signed the two remaining contracts in his capacity as "AVP -- Operations & Accounts" for PISI and Prithvi Catalytic respectively.

27. The agreements called for the Prithvi companies to assign certain accounts receivable to Kyko. Under the agreements, as the Prithvi companies performed work, they would issue invoices to bill their purported customers for services rendered. However, instead of sending the invoices directly to the purported customer, the Prithvi companies would send them to Kyko. Kyko, in turn, would contact the purported customer on each invoice to confirm that the work was performed and that the invoice was legitimate. After receiving confirmation of the invoice's legitimacy from the purported customer, Kyko would advance the Prithvi companies a portion of the accounts receivable. Once the purported customer was ready to pay what it owed, the customer would pay Kyko directly. On receipt of payment for the invoice, Kyko would remit the balance of the accounts receivable, minus the amount already advanced to the Prithvi

Indictment - 6

companies and minus a factoring fee. According to the agreement, the Prithvi companies were liable for full payment of the accounts receivable to Kyko if the purported customer failed to pay.

28. In connection with the factoring agreements, the defendants executed a number of documents including guarantees, security agreements, and checks, all to induce Kyko into believing that Kyko would have a means to recover funds in the event that one of the customers failed to pay on an invoice. For example, on or about November 21, 2011, GURU PANDYAR executed guarantees on behalf of PISI and Prithvi Catalytic that indemnified and guaranteed payment to Kyko. Similarly, on or about December 2, 2011, MADHAVI and SATISH VUPPALAPATI executed separate guarantees that personally guaranteed payment to Kyko. SATISH VUPPALAPATI signed his guarantee as an "Individual residing in India." MADHAVI VUPPALAPATI signed her guarantee as an "Individual residing in the State of Washington." Her guarantee also indicated that it was signed, sealed and delivered in the presence of an individual in Bellevue, Washington.

29. The defendants took sophisticated steps to create the appearance that the five sham customers had approved the assignment of the accounts receivable to Kyko. For example, the defendants provided Kyko with letters of assignment that were purportedly reviewed and agreed to by the sham customers. In truth and fact, the letters were signed by members of the conspiracy posing as employees of the sham customers.

30. To start the factoring process, the defendants sent Kyko invoices in which the Prithvi companies purported to bill the five customers for services rendered. After receiving the invoices, Kyko contacted the customers directly using the purported customer email addresses provided by the defendants, to confirm the legitimacy of the invoices. Then, the defendants, impersonating employees of the sham customers, confirmed the invoices.

Indictment - 7

31. On or about December 9, 2011, Kyko began advancing funds to the defendants under the factoring arrangement after Kyko received confirmation from the purported customers that the invoices subject to payment were legitimate. To create the appearance that the sham customers were making payments on the invoices, the defendants transferred money received from Kyko to bank accounts for the sham businesses, and then made purported invoice payments to Kyko from those accounts.

#### 2. Payments from the Five Sham Customers Cease

32. On or about February 12, 2013, payments to Kyko from the sham customers stopped. At that time, the sham customers owed Kyko over $14 million in outstanding payments.

33. When Kyko contacted the defendants about the delinquent payments, the defendants fraudulently explained that Prithvi was embroiled in a lawsuit with a Japanese corporation that had garnished Prithvi's bank accounts and assumed ownership of the five customer's receivables. The defendants fraudulently assured Kyko that the matter would be resolved and that payments would resume soon.

#### 3. Defendants Issue Fraudulent Guarantees to Continue the Scheme

34. To appease Kyko and to continue the fraud scheme, the defendants continued to issue fraudulent guarantees and to make false promises to Kyko.

35. To further deceive Kyko into believing that it would receive payment, the defendants issued a number of fraudulent guarantees backed by numerous checks that Kyko purportedly could cash to satisfy any outstanding amounts owed. For example, on about March 12, 2013, MADHAVI VUPPALAPATI issued to Kyko ten personal guarantee checks in the amount of $2,000,000 each for a total of $20,000,000. On or about March 12, 2013, MADHAVI VUPPALAPATI also issued to Kyko the following guarantee checks to be issued on behalf of the following companies: (a) ten checks in the amount of $2,000,000 each for a total of $20,000,0000 from the bank account for Prithvi

Indictment - 8

Information Solutions, LLC; (b) ten checks in the amount of $2,000,000 each for a total of $20,000,0000 on behalf of Prithvi; (c) ten checks in the amount of $2,000,000 each for a total of $20,000,000 on behalf of Inalytix; (d) ten checks in the amount of $2,000,000 each for a total of $20,000,000 on behalf of Prithvi Catalytic; and (e) ten checks in the amount of $2,000,000 each for a total of $20,000,000 on behalf of PSI. MADHAVI VUPPALAPATI issued these checks knowing that Kyko would not be able to redeem them because there was insufficient funds in the accounts on which they were drawn.

36. In approximately March 2013, the defendants offered to replace the overdue receivables owed by the five sham customers with other receivables owed to Prithvi companies. On or about March 29, 2013, the defendants issued and executed a guarantee to Kyko that was binding on Prithvi Catalytic, PSI, PISI, Inalytix, IBS, Avani, Ananya, MADHAVI VUPPALAPATI in an individual capacity, and SATISH VUPPALAPATI in and individual capacity. Among other things, the guarantee identified approximately 46 customers that purportedly owed accounts receivable to Prithvi Catalytic, PSI, PISI, Inalytix, IBS, Avani, and Ananya. The defendants executed numerous documents to assign these accounts receivable to Kyko and to guarantee payment to Kyko.

### 4. Kyko Discovers the Fraud

37. Even after payments from the sham customers stopped, the defendants repeatedly assured Kyko that the Prithvi companies had performed work for the original five customers and the 46 new customers. For example, on or about April 24, 2013, despite knowing fully that the original five customers were sham entities created solely to deceive Kyko, MADHAVI VUPPALAPATI executed a declaration at Kyko's request in Redmond, Washington under penalty of perjury, that averred that Prithvi had performed work for the original five customers, and that the accounts receivable related to that work were owed to Kyko. The declaration attached and incorporated schedules purporting to

show the receivables that the sham customers owed. On or about April 26, 2013, SATISH VUPPALAPATI, executed a similar declaration in India.

38.  Unbeknownst to the defendants, Kyko contacted the actual companies that were purportedly Prithvi customers. Through its investigation of these companies, Kyko discovered that the defendants and their co-conspirators had created sham companies to impersonate the companies.

39.  On June 17, 2013, Kyko filed a lawsuit in the Western District of Washington against the defendants and businesses used to perpetrate the factoring fraud scheme. To frustrate Kyko's attempts to recover assets, MADHAVI and SATISH VUPPALAPATI continued to made false promises and representations to Kyko. In particular, MADHAVI and SATISH VUPPALAPATI made false promises to repay Kyko and offered to assign additional accounts receivable to Kyko.

C.  **Execution of the Scheme to Defraud**

40.  On or about the below-listed dates, at Bellevue and Redmond, within the Western District of Washington and elsewhere, MADHAVI VUPPALAPATI, SATISH VUPPALAPATI, SRINIVAS SISTA, GURU PANDYAR, and others known and unknown to the grand jury, for the purpose of executing the aforementioned scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, promises and concealment of material facts, and attempting to do so, did knowingly and intentionally cause to be transmitted, in interstate commerce by means of a wire communication, certain signs, signals, and sounds, as described below, each transmission of which constitutes a separate count of this Indictment.

| Count | Date | Wire |
|---|---|---|
| 1. | 12/21/2012 | Email from "Tanu Gupta" to Kyko and GURU PANDYAR regarding "Confirmation of Invoices." |

Indictment - 10

| | | |
|---|---|---|
| 2. | 12/21/2012 | Email from "Alves Oilveira" to Kyko and GURU PANDYAR regarding "Confirmation of Invoices." |
| 3. | 12/27/2012 | Wire transfer of $779,382 from Huawei Latin American Solutions, Inc. in Bellevue, WA to Kyko's account at the National Bank of Canada. |
| 4. | 1/3/2013 | Email from "Aravind Kumar" to Kyko and GURU PANDYAR regarding "Confirmation of Invoices." |
| 5. | 1/4/2013 | Wire transfer of $218,719 from EPP, Inc. in Bellevue, WA to Kyko's account at the National Bank of Canada. |
| 6. | 1/23/2013 | Email from GURU PANDYAR to Kyko and SATISH VUPPALAPATI regarding "Overdue Amounts of Prithvi Customers." |
| 7. | 1/23/2013 | Email from "Tanu Gupta" to Kyko and GURU PANDYAR regarding "Confirmation of Invoice." |
| 8. | 1/24/2013 | Wire transfer of $216,711 from EPP, Inc. in Bellevue, WA to Kyko's account at the National Bank of Canada. |
| 9. | 1/24/2013 | Wire transfer of $260,125 from Financial Oxygen, Inc. in Redmond, WA to Kyko's account at the National Bank of Canada. |
| 10. | 2/8/2013 | Wire transfer of $260,125 from Financial Oxygen, Inc. in Redmond, WA to Kyko's account at the National Bank of Canada. |

| 11. | 2/11/2013 | Wire transfer of $232,525 from L3C, Inc in Bellevue, WA to Kyko's account at the National Bank of Canada. |
|---|---|---|
| 12. | 2/12/2013 | Wire transfer of $236,510 from L3C, Inc in Bellevue, WA to Kyko's account at the National Bank of Canada. |
| 13. | 2/13/2013 | Email from GURU PANDYAR to Kyko and SATISH VUPPALAPATI regarding "Prithvi Outstanding over 140 & 135 days." |
| 14. | 4/16/2013 | Email from GURU PANDYAR to Kyko and SATISH and MADHAVI VUPPALAPATI regarding "Kyko Checks" |
| 15. | 4/24/2013 | Email from GURU PANDYAR to Kyko and SATISH and MADHAVI VUPPALAPATI regarding "Affidavits" |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 16 - 20

**(Willfully Failing to Pay Over Employment Taxes)**

41. The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 - 39 of this Indictment.

42. At all times relevant to this indictment, Prithvi Catalytic was a corporation doing business in Bellevue, Washington. Prithvi Catalytic was in the business of providing professional consulting services and workforce solutions.

43. Beginning in or about 2010, and continuing until on or about September, 2013, defendant MADHAVI VUPPALAPATI acted as Prithvi Catalytic's general manager. MADHAVI VUPPALAPATI made business decisions for the company. She controlled Prithvi Catalytic's business affairs, approved payments by the company, and controlled Prithvi Catalytic's bank accounts.

44. During the third quarter of 2012 through third quarter of 2013, defendant MADHAVI caused Prithvi Catalytic to transfer funds to Prithvi Information Systems Limited, a separate company for which MADHAVI VUPPALAPATI was the Chairperson and Director, at the same time, failing to pay over to the Internal Revenue Service payroll tax withheld from Prithvi Catalytic's employees' paychecks. Prithvi Information Systems used the funds, in some cases, for day-to-day operations and payments made to MADHAVI VUPPALAPATI.

### Employment Tax Withholding

45. At all times relevant to this Indictment, Prithvi Catalytic withheld taxes from its employees' paychecks, including federal income taxes, Medicare and social security taxes (often referred to as Federal Insurance Contribution Act or "FICA" taxes). These taxes will be referred to in this Indictment collectively as "payroll taxes."

46. Prithvi Catalytic was required to make deposits of the payroll taxes to the Internal Revenue Service on a periodic basis. In addition, Prithvi Catalytic was required to file, following the end of each calendar quarter, an Employer's Quarterly Federal Income Tax Return (Form 941), setting forth the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of social security and Medicare taxes due, and the total tax deposits.

47. As the owner of Prithvi Catalytic, defendant MADHAVI VUPPALAPATI was a "responsible person," that is, she had the corporate responsibility to collect, truthfully account for, and pay over Prithvi Catalytic's payroll taxes.

48.     Throughout the calendar years 2012 and 2013, Prithvi Catalytic withheld tax payments from its employees' paychecks. However, beginning in approximately July 2012, Prithvi Catalyticmade no payments to the Internal Revenue Service, which were due by the following Wednesday or Friday after employees were paid.

49.     Beginning in the third quarter of 2012, Prithvi Catalytic further failed to file quarterly employment tax returns (Forms 941) with the Internal Revenue Service. Each Form 941 was due to be filed at the end of the month following the end of each calendar quarter. For example, the Form 941 for the third quarter of 2012 was due on or before July 31, 2012, because the third calendar quarter ended on June 30, 2012.

50.     Altogether, during the five calendar quarters alleged in Counts 16 through 20 of this Indictment, Prithvi Catalytic failed to account for and pay over approximately $3,897,873.72 in payroll taxes.

### Failure to Account For and Pay Over Employment Tax

51.     For tax years 2012 and 2013, defendant MADHAVI VUPPALAPATI did willfully fail to truthfully account for and pay over to the Internal Revenue Service all of the federal income taxes withheld and Federal Insurance Contribution Act taxes due and owing to the United States on behalf of Prithvi Catalytic and its employees, for each of the following quarters, with each calendar quarter constituting a separate count of this Indictment:

| Count | Quarter | Amount |
|---|---|---|
| 16 | Third Quarter of 2012 | $746,893.11 |
| 17 | Fourth Quarter of 2012 | $867,482.63 |
| 18 | First Quarter of 2013 | $866,610.26 |
| 19 | Second Quarter of 2013 | $463,882.00 |
| 20 | Third Quarter of 2013 | $953,005.72 |

All in violation of Title 26, United States Code, Section 7202.

Indictment - 14

# COUNT 21

## (Money Laundering Conspiracy)

52. The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 - 51 of this Indictment.

53. Beginning on or around August 2011, and continuing until on or about July 2014, at Bellevue, within the Western District of Washington, and elsewhere, MADHAVI VUPPALAPATI, SATISH VUPPALAPATI, SRINIVAS SISTA, GURU PANDYAR, and others known and unknown to the grand jury, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

    a. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

    b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the

Indictment - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

        c.     to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

### Wire Fraud

54. The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 - 53 of this Indictment, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

55. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts 1-15 of this Indictment, the defendants, MADHAVI VUPPALAPATI, SATISH VUPPALAPATI, SRINIVAS SISTA, GURU PANDYAR, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, a money judgment in the amount of $14,424,074.50, representing a portion of the proceeds obtained by the offences.

## Money Laundering Conspiracy

56. The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 - 53 of this Indictment, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

57. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1956(h), as set forth in Count 26, the defendants, MADHAVI VUPPALAPATI, SATISH VUPPALAPATI, SRINIVAS SISTA, GURU PANDYAR, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

## Substitute Assets

58. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

//

//

Indictment - 17

1 | the United States of America shall be entitled to forfeiture of substitute property pursuant
2 | to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States
3 | Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

DATED: 12·13·17

*Signature of Foreperson Redacted Per*
*Policy of Judicial Conference*

_____
FOREPERSON

*[signature]*
ANNETTE L. HAYES
United States Attorney

*[signature]*
ANDREW C. FRIEDMAN
Assistant United States Attorney

*[signature]*
FRANCIS FRANZE-NAKAMURA
Assistant United States Attorney

Indictment - 18